J. Leland Anderson and Rubye T. Anderson v. Commissioner.
Anderson v. Commissioner
Docket Nos. 67665 and 68649.
United States Tax Court
T.C. Memo 1962-152; 1962 Tax Ct. Memo LEXIS 158; 21 T.C.M. (CCH) 828; T.C.M. (RIA) 62152; June 25, 1962
Thaddeus Rojek, Esq., for the petitioners. Edward M. Fox, Esq., and Douglas W. Argue, Esq., for the respondent. SCOTT Memorandum Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1953 and 1955 in the amounts of $9,729.44 and $18,705.17, respectively. The only issue for decision is whether certain amounts paid by petitioners to an insurance company in 1953 and 1955 were properly deductible as interest on indebtedness. All of the facts are stipulated and are found accordingly. *159 Petitioners, husband and wife residing in Los Angeles, California, filed joint Federal income tax returns, prepared on the cash basis, for the calendar years 1953 and 1955 with the district director of internal revenue at Los Angeles, California. On the return for 1953 in the space designated for occupation appeared the statement, "Full Time Life Insurance Salesman," and on the 1955 return under occupation appeared the statement, "Insurance Broker." Sometime prior to December 31, 1953, J. Leland Anderson (hereinafter referred to as petitioner) and United Guaranty Life Society, Phoenix, Arizona (hereinafter referred to as United Guaranty) agreed that the events as hereinafter described with respect to 15 deferred life annuity contracts would transpire and that all documents executed in connection therewith as hereinafter described would be so executed by them. On December 31, 1953, petitioner applied to United Guaranty for the issuance of 15 deferred life annuity contracts. The consideration specified by each contract was $100,000, making a total of $1,500,000. As payment of the consideration of $1,500,000 United Guaranty, on December 31, 1953, accepted petitioner's nonrecourse *160 demand promissory note in the face amount of $1,500,000. On this same date United Guaranty accepted petitioner's application for the deferred life annuity contracts and issued to him 15 such contracts each dated December 31, 1953, the 15 contracts being identical in all respects. On the same date United Guaranty agreed to lend petitioner a total of $1,541,250 pursuant to the terms of 15 contract loan agreements executed by petitioner, each in the amount of $102,750. The 15 contract loan agreements are identical. As sole security for the loan petitioner assigned to United Guaranty the 15 annuity contracts. On the same date United Guaranty, pursuant to the instructions of petitioner, applied $1,500,000 of the proceeds of the loan to the payment of the promissory note which petitioner had delivered in payment of the consideration for the contracts. The note was returned to petitioner with payment acknowledged thereon by United Guaranty as of December 31, 1953. A check in the amount of $41,250, representing the balance of the loan proceeds, was also delivered to petitioner on December 31, 1953. The contract loan agreements contained the following provision: If at any time the entire *161 indebtedness evidenced by this loan, together with any other indebtedness to the Company on said contract shall exceed its cash value computed as of the end of the period through which interest on this and any similar agreement has been paid in advance the Company's liability under said contract shall terminate upon compliance by the Company with the requirements of the contract, if any, respecting notice. The obligations of the Company set forth in the above mentioned contract shall at all times, at the election of the Borrower, be an offset to this obligation in the hands of all persons or corporations whosoever. In event of the liquidation of the Company for any reason whatsoever, its obligations under said contract shall be a complete and full offset to the obligations of the owner hereunder, which shall thereupon cease and determine. On December 31, 1953, petitioner delivered to Farmers and Stockmens Bank, Phoenix, Arizona, his certified check in the amount of $45,852.19, together with instructions to deposit this certified check to the account of United Guaranty in payment of 1 year's interest in advance on the loan of $1,541,250 at the rate of 2.965 percent. Each of the *162 deferred annuity contracts provided in part as follows: UNITED GUARANTY LIFE SOCIETY (hereinafter called The Company) * * *
Hereby Agrees to Pay AN ANNUITY Contract No. * * * to JAMES LELAND ANDERSON (hereinafter called the Annuitant) subject to the provisions hereinafter stated, in monthly payments of 756.32 Dollars each commencing at the Retirement Date defined below, if the Annuitant is then living and this Contract is then in full force, and Annuity Payments of 756.32 Dollars to be made on the same day of each month thereafter, such Annuity Payments terminating with the last Annuity Payment due preceding the death of the Annuitant, except as hereinafter provided. If the death of the Annuitant occurs on or after the Maturity Date, but before 120 monthly Annuity Payments shall have become due and if due proof of such death shall have been received, the Company will continue the Annuity Payments to the beneficiary, until 120 monthly Annuity Payments in all shall have been made. * * *
RETIREMENT DATE. The Retirement Date is the contract anniversary upon which the Annuitant's age at nearest birthday is 65 years. DEATH BENEFIT PRIOR TO RETIREMENT DATE. If the *163 Annuitant dies prior to the Retirement Date, the Company will pay as a Death Benefit an amount equal to the consideration or the Cash Value, if greater, less, in either case, any indebtedness herein in monthly installments commencing upon receipt of due proof of the death of the Annuitant. * * * CONSIDERATION. This Contract is issued at age 49 in consideration of the payment to the Company of $ * * ONE HUNDRED THOUSAND * * * Dollars (Herein called the Consideration). * * *
OPTIONAL MATURITY DATE. In lieu of the Annuity otherwise provided by this Contract, the Annuitant, with written consent of the Owner, may elect, by filing written notice of election with the Company at its Home Office at any time not later than sixty (60) days prior to any anniversary of this Contract preceding the Retirement Date, to receive an Annuity in an adjusted amount, the first payment to become due on an anniversary of this Contract prior to Retirement Date and subsequent to the date of filing written notice of such election (the anniversary thereby elected as the date for the commencement of the Annuity in an adjusted amount being herein called the Optional Retirement Date). The adjusted amount of *164 Annuity payable, provided this Contract is in full force on the Optional Retirement Date, shall be the amount that the Net Cash Value of this Contract at the Optional Retirement Date will provide in accordance with the Table immediately following * * *
OPTIONAL SINGLE SUM SETTLEMENT. In lieu of any Annuity otherwise provided by the terms of this Contract, the Annuitant, with written consent of the Owner, may elect, by surrendering this Contract and filing written notice of election with the Company at its Home Office within thirty (30) days prior to the date upon which the First Annuity Payment would otherwise become due under the terms of this Contract, to receive in a single sum the Net Cash Value of this Contract at that date, provided this Contract is in full force at that date. * * *
BASIS OF RESERVE. Reserves for which funds are to be held upon this Contract shall be calculated on the basis of 2 3/4% interest, compounded annually, prior to the due date of the first Annuity Payment provided by the terms of this Contract by a net premium method; and the 1937 Standard Annuity Mortality Table with age rated back 2 years and with 2 1/2% interest per annum after the commencement *165 of Annuity Payments hereunder. * * *
CONTRACT LOANS. Upon written assignment and upon the sole security of this Contract, the Company will loan prior to the Retirement Date an amount not to exceed the Cash Value as of the end of the period to which interest on said loan has been paid in advance. If interest thereafter is not paid when due, it shall be added to the existing loan and bear interest at the same rate. Failure to repay any loan or to pay interest thereon, shall not void this Contract, unless the total indebtedness hereon shall equal or exceed the Cash Value and in no event until 31 days after the Company shall have mailed notice to the last known address of the Annuitant and of the assignee of record, if any. The whole or any part of the loan may be repaid at any time while this Contract is in force, or, with appropriate reduction in monthly payments as shown on the face hereof, may be reduced by the application of any part of the consideration paid for this Contract. All Annuity Payments falling due while there is a loan against this Contract, shall be applied as they fall due; to the payment of interest and retirement of such loan. The rate of interest for the first *166 contract year shall not exceed 2.965% per annum and said rate of interest shall be reduced by at least - % per annum at the beginning of the - contract year and at the beginning of each - succeeding contract year until such time as the rate of interest shall have been reduced to - % per annum. Thereafter the rate interest of each contract year shall not exceed - % per annum. Cash values at the end of contract years per $1,000 of consideration were shown in the contract as of the end of the 1st through the 30th year. The amounts so shown for the first 8 years were as follows: End of
Cash or
Contract Year
Loan Value
1
$1,027.50
2
1,055.76
3
1,084.79
4
1,114.62
5
1,145.27
6
1,176.77
7
1,209.13
8
1,242.38
On December 31, 1954, United Guaranty agreed to lend petitioner a total of $1,583,625, pursuant to the terms of 15 identical contract loan agreements executed by petitioner, each in the amount of $105,575, and pursuant to petitioner's instructions, applied $1,541,250 to the payment of the then existing "indebtedness" [1] and delivered to petitioner its check in the amount of $42,375, representing the balance of the new loan proceeds. The contracts *167 contained the identical provision with respect to the "indebtedness" exceeding the cash value of the contract and the company's obligation being an offset to the obligation evidenced by the loan contract agreements that was contained in the contract loan agreements signed in 1953. On December 31, 1954, petitioner paid to United Guaranty the sum of $46,954.50, representing the payment of 1 year's interest in advance on the then existing "indebtedness" of $1,583,625 at the rate of 2.965 percent. On December 31, 1955, United Security Life, successor in interest to United Guaranty, agreed to lend petitioner a total of $1,627,185, pursuant to the terms of 15 identical contract loan agreements executed by petitioner, each in the amount of $108,479, and as sole security therefor, petitioner assigned to United Security Life the 15 annuity contracts. These contracts contained the identical provision with respect to the "indebtedness" *168 exceeding the cash value of the contract and the company's obligation being an offset to the obligation evidenced by the loan contract agreements that was contained in the contract loan agreements signed in 1953 and 1954. On December 31, 1955, United Security Life, pursuant to instructions of petitioner, applied $1,583,625 to the payment of the then existing "indebtedness" and delivered to petitioner its check in the amount of $43,560, representing the balance of the new loan proceeds. On December 30, 1955, petitioner paid to United Security Life the sum of $48,246, representing the payment of 1 year's interest in advance on the then existing "indebtedness" of $1,627,185 at the rate of 2.965 percent. This payment was made by two checks, each in the amount of $24,123. The same procedure, whereby a new loan contract agreement for an increased amount over the previous year's balance with United Security Life was executed by petitioner, an amount sufficient to pay the previous year's indebtedness was, pursuant to the instructions of petitioner, applied against the "indebtedness," the balance of the new loan proceeds were delivered to the petitioner, and an amount greater than the new *169 loan proceeds was paid to United Security Life representing the payment of 1 year's interest in advance on the then existing "indebtedness" of petitioner, was followed in each of the years 1956, 1957, 1958, and 1959. On December 31, 1960, petitioner's annuity transactions with United Security Life were terminated, and the cash surrender value of the annuities in the amount of $1,863,571.17 was applied to the payment of the then existing "indebtedness" secured by the annuities in the amount of $1,863,570. The net difference of $1.17 was credited to petitioner. Petitioners, on their 1953 income tax return, deducted as interest paid, the amount of $45,852.19 which represented the check in that amount that had been delivered on December 31, 1953, to the Farmers & Stockmens Bank, Phoenix, Arizona with instructions that it be deposited to the account of United Guaranty. On their 1955 income tax return, petitioners deducted as interest the amount of $48,246, paid on December 30, 1955, to United Security Life. Respondent, in his notices of deficiency disallowed each of these claimed deductions with the explanation that such amount "is not interest within the meaning" of section 23(b) *170 of the Internal Revenue Code of 1939 and section 163 of the Internal Revenue Code of 1954 and "is not deductible for Federal income tax purposes." It is respondent's position that the holding of the Supreme Court in Knetsch v. United States, 364 U.S. 361 (1960), is controlling in the instant case and on the basis of that case his determination should be sustained. Petitioner recognizes that the decision of the Supreme Court would be controlling if the factual situation in the instant case were the same as in that case but calls attention to the statement therein that "There may well be single premium annuity arrangements with nontax substance which create an 'indebtedness' for the purposes of section 23(b) of the 1939 Code and section 163(a) of the 1954 Code." Petitioner then argues that the facts in the instant case are distinguishable from those in the Knetsch case and that the annuity arrangement here involved is one with nontax substance which created an "indebtedness" for the purposes of section 23(b) of the Internal Revenue Code of 1939 and section 163(a) of the Internal Revenue Code of 1954. Petitioner argues that *171 there are three distinctions between the facts here involved and those in Knetsch v. United States, supra. First, petitioner states that in the Knetsch case, the taxpayer was never personally liable on the annuity loans since they were nonrecourse loans, whereas in the instant case the annuity contract loans to petitioner were not nonrecourse and petitioner was personally liable on the loans secured by the annuity contracts. Petitioner's second distinction is that the taxpayer in the Knetsch case had to live to age 90 years to collect an annuity, whereas in the instant case the stated retirement age in the contract was 65 years and the maturity date could have been accelerated at any time at the option of the owner of the annuity (petitioner). The third distinction petitioner makes between the instant case and the Knetsch case is that in the Knetsch case the contract loans provided for interest at a rate of 3 1/2 percent while the taxpayer's annuity contracts earned 2 1/2 percent annually, whereas the annual interest rate on petitioner's contract loans was only 2.965 percent while his annuity contracts earned 2.75 percent annually. Petitioner also argues that he received *172 benefits other than anticipated income tax deductions from the transactions here involved. He states that the literature with respect to annuity contracts points out two particularly attractive features of such plans, the first being that the annuities serve as a flexible hedge against inflation, and the second that present premium rates are attractive since the existing rate tables do not reflect the extended longevity resulting from the recent strides in the field of medicine. Petitioner contends that he received these benefits and those resulting from the optional maturity date and borrowing features of his annuity contracts in exchange for the payment of the differential in interest and therefore had "all the benefits and risks of ownership" just as the taxpayer in L. Lee Stanton, 34 T.C. 1 (1960). The first distinction made by petitioner between the instant case and the Knetsch case does not in fact exist. The original note given by petitioner to United Guaranty was nonrecourse. From the provisions of the annuity contracts and the contract loan agreements signed by petitioner, it is clear that no personal liability of petitioner to pay the loans in fact existed *173 since in case of nonpayment the surrender value of the annuity contracts was to be used to pay the loan and this surrender value at petitioner's election would be an offset against the loans in the hands of all persons or corporations whatsoever. The second distinction which petitioner contends exists was also present in William R. Lovett, 37 T.C. 317 (1961), on appeal (C.A. 5, Feb. 21, 1962). The contract involved in the Lovett case provided that at any time during the first 29 years of the policy (the annuity in that case to commence on the 30th anniversary of the policy) the annuitant might "convert the net cash value of the policy to an immediate refund annuity by electing an optional maturity date, payments under such an immediate refund annuity to be made in accordance with a table of payments set forth in the contract * * *." In William R. Lovett, supra, we held the payments denominated "interest" not to be deductible stating that the transactions there while different in form were indistinguishable in principle from those in the Knetsch case. The third distinction which petitioner contends exists is merely one of degree and does not create a distinction *174 in principle from the situation in the Knetsch case. Petitioner herein in form undertook to purchase 15 deferred annuity contracts for the total premium of $1,500,000, and in form borrowed the entire premium plus all of the prepaid interest except $4,602.19 in 1953 and $4,686 in 1955. However, here, as in the Knetsch case, in fact and in substance, this was a fiction because each year petitioner's "annual borrowings kept the net cash value on which any annuity or insurance payments would depend" at zero. Under these circumstances petitioner's transactions with United Guaranty resulted, as did the transactions involved in the Knetsch case, in nothing of substance to be realized therefrom "beyond a tax deduction." There is no evidence in the record to support petitioner's argument that the annuity contracts served as a flexible hedge against inflation or were at attractive rates because of any expected longevity. Certainly, any such argument would apply equally to Knetsch v. United States, supra, and William R. Lovett, supra.L. Lee Stanton, supra, relied upon by petitioner, involved a completely different factual situation from thate involved *175 in the instant case. Decision will be entered for respondent. Footnotes
1. The parties, in their stipulation of facts, provided that it was understood that in using such terms as payment, loan, interest, indebtedness, and promissory note, the respondent is referring only to the form and not to the substance of the transaction.↩